# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| **FANSTEEL FOUNDRY CORPORATION**<br><br>Debtor<br><br>1739 Commerce Rd.<br>Creston, IA 50801<br><br>EIN: 36-3198501 | Case No. 16-01825-als11<br><br>Chapter 11<br><br>Hon. Anita L. Shodeen<br><br>**EMERGENCY MOTION OF GORDIAN GROUP, LLC TO COMPEL BUYER TO DIRECT ESCROW AGENT TO RELEASE FUNDS; REQUEST FOR SANCTIONS** |

Gordian Group, LLC ("Gordian"), retained in this case as investment banker to Debtor Wellman Dynamics Corporation, n/k/a Fansteel Foundry Corporation ("WDC" or the "Debtor"), respectfully requests that this Court compel WDC Acquisition LLC, assignee of TCTM Financial FS LLC (collectively, the "Buyer"), to issue a written notice to Chicago Title Insurance Company (the "Escrow Agent"), directing the Escrow Agent to release $1,251,023.08 from a certain escrow fund to Gordian, consistent with this Court's order approving Gordian's fee application and overruling the Buyer's objection thereto. Gordian also requests that the Court sanction the Buyer for its obstructive behavior, including but not limited to requiring the Buyer to reimburse Gordian for its attorneys' fees and expenses incurred in connection with this Motion and Gordian's earlier efforts to obtain allowance and payment of its compensation. In support of this Motion, Gordian respectfully shows the Court as follows:

## JURISDICTION

1.      The Court has jurisdiction over this matter pursuant to (a) 28 U.S.C. §§ 157 and 1334; (b) the reservation of jurisdiction in paragraph 27 of the Court's order approving the sale of WDC's assets (document no. 536); (c) the express consent of the parties, as stated on the record at a hearing held on September 7, 2018; and (d) the Court's inherent jurisdiction to

enforce its own orders. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### ESCROW BACKGROUND

2. Gordian was employed as the Debtor's investment banker by order entered on September 11, 2017 (document no. 339). That order approved the terms and conditions of the engagement letter dated September 6 (the "Engagement Letter"), which was attached. Paragraph 3 of the Engagement Letter stated that "in the event that a Financial Transaction occurs, the Successful Bidder shall, at the Sale Closing, place into escrow cash sufficient to pay any Court approved fees and expenses of Gordian pursuant to this engagement letter." Paragraph 5 similarly provided that "the Debtors shall ensure that the amount of fees earned but not yet approved and paid shall not be distributed by the Debtors (e.g., held in escrow) pending such approval."

3. The Court approved the sale of the Debtor's assets to the Buyer on March 12, 2018. The Court's order approving the sale (document no. 536) (the "Sale Order") included a copy of the Asset Purchase Agreement between the Debtor and the Buyer (the "APA"). Section 2.1 of the APA required the Buyer to pay "the fees and expenses of the Debtor's investment banker, Gordian Group, LLC in accordance with Section 3.3." That section, in turn, required that, at the closing of the sale, the Buyer would "place into escrow (with an escrow agent mutually satisfactory to Buyer and the Debtor) cash sufficient to pay any Court approved fees and expenses of the Debtor's investment banker, Gordian Group, LLC," pursuant to the terms of the Engagement Letter.

4. The Buyer did not comply with these requirements at the closing of the sale, escrowing only $175,000 instead of the $1,251,023.08 invoiced by Gordian. As a result,

Gordian filed an emergency motion to require the Buyer to comply, which the Court granted by order dated May 21, 2018 (document no. 714). Gordian has been advised by the Buyer's counsel that the Escrow Agent now holds $1,256,249.61.

5. On November 28, 2018, Gordian received a copy of an Escrow Agreement dated as of May 7, 2018, among the Debtor, the Buyer, and the Escrow Agent (the "Escrow Agreement"). A copy of the document received by Gordian is attached hereto as Exhibit A. The Escrow Agreement appears to have been executed in connection with the Buyer's initial deposit of $175,000 at the closing of the sale transaction. Gordian is not a party to the Escrow Agreement.

## FEE APPLICATION BACKGROUND

6. Gordian filed its final fee application in connection with the sale of WDC's assets on May 30, 2018 (document no. 728) (the "Fee Application"). The Buyer objected to the Fee Application, and the Court held an evidentiary hearing on the Fee Application on September 7, 2018. At that hearing, the Buyer called no witnesses and introduced only two exhibits (both relating to uncontroversial and immaterial issues).

7. The Court entered an order on November 27, 2018, granting the Fee Application in full and overruling the Buyer's objection (document no. 1000) (the "Fee Order"). Among other things, the Court questioned the Buyer's standing to object to the Fee Application; concluded that uncontroverted evidence—including the Buyer's contemporaneous agreement—supported Gordian's position that a "qualifying bid or overbid" for WDC had been received; held that Gordian presented undisputed evidence establishing the reasonableness of its fees and expenses; and rejected the Buyer's argument that the effective hourly rate implied by Gordian's percentage fee was excessive.

8. Following receipt of the Fee Order, Gordian requested that the Buyer supply a copy of the Escrow Agreement and contact information for a representative of the Escrow Agent to whom Gordian could send wiring instructions. The Buyer's counsel provided a copy of the Escrow Agreement on November 28, 2018, but advised that the Buyer intends to appeal the Fee Order. Counsel also took the position that because one provision of the Escrow Agreement refers to entry of "a final, non-appealable order of a court of competent jurisdiction," the Escrow Agent could not release funds to Gordian.

9. Gordian replied the following morning, pointing out that the Escrow Agent is required to release funds within three business days after receiving a joint notice from the Debtor and the Buyer to do so (referred to in the agreement as a "Joint Release Notice"). Gordian requested that the Buyer confirm that it would execute a Joint Release Notice, directing the amount approved in the Fee Order to be paid to Gordian, without prejudice to repayment if and to the extent that the Buyer were successful on appeal. The Buyer refused, indicating that it intends to file a notice of appeal and a motion for stay pending appeal.

## RELIEF REQUESTED

10. Like many professional-services firms, Gordian operates on a cash accounting basis and has a fiscal year that ends on December 31. The fees and expenses involved here accrued between July 2017 and May 2018. Gordian has been paid nothing on account of its work on the WDC transaction,[1] and it has incurred more than $60,000 in fees and expenses to

---

[1] Within the last week, Gordian received $125,085.56 from the Liquidating Trustee on account of its work on the sale of the assets of Wellman Dynamics Machinery & Assembly, Inc. That transaction closed in January 2018, and the Court approved Gordian's fee application on March 12.

retain outside counsel to pursue the compensation it is owed and to address the multiple efforts by the Buyer to avoid or delay payment.

11. The Buyer's most recent effort to avoid payment is patently frivolous, dilatory, and lacking in any plausible justification. Paragraph 5 of the Engagement Letter provides that Gordian's compensation "shall be paid in full upon approval of the relevant fee application filed by Gordian." Neither the Engagement Letter nor the APA contains any language that would permit the Buyer to withhold payment while it pursues an appeal.

12. The Fee Order became effective upon its entry, and it is not subject to any stay. Federal Rule of Civil Procedure 62, which includes a stay of proceedings to enforce a judgment, does not apply in contested matters. *See* Fed. R. Bankr. P. 7062, 9014(c).[2] If the Buyer wants to pursue an appeal without complying with the Fee Order, it has the burden to obtain a stay pending appeal under Rule 8007. That, of course, would require the Buyer to make "a strong showing that [it] is likely to succeed on the merits," to demonstrate that it will be irreparably injured without a stay, to convince the Court that a stay will not substantially injure other parties, and to show that a stay will advance the public interest. *Nken v. Holder*, 556 U.S. 418, 426 (2009). *See also In re Gould*, 371 B.R. 6, 9 (Bankr. D. Conn. 2007) (ordering disbursement of escrowed funds to satisfy creditor's claim for attorneys' fees and denying debtor's motion for stay pending appeal for lack of irreparable harm); *Gerlich v. Leath*, No. 4:14-cv-264, 2016 WL 10567633, at *2 (S.D. Iowa Feb. 26, 2016) (denying stay for failure to make strong showing of likelihood of success or irreparable harm); *In re Wire Rope Corp.*, 302 B.R. 646, 648 (Bankr. W.D. Mo. 2003) (denying stay of order directing workers' compensation guaranty corporation to pay claims of debtor's employees for failure to establish any of the four factors).

---

[2] Rule 7062 was amended on December 1, 2018 to take account of a change to Rule 62. The amendment does not apply but would be immaterial in any event. Rule 9014 remains unchanged.

5

13. Gordian will discuss all of the stay factors in detail if and when the Buyer seeks a stay pending appeal, but for present purposes it is sufficient to state that the highly deferential standard of review and the Buyer's complete failure to present any direct evidence supporting its objection make success on the merits exceptionally unlikely. *See, e.g., In re Grady*, 618 F.2d 19, 20 (8th Cir. 1980) ("The reason for this limited review is the bankruptcy judge's familiarity with the efforts and accomplishments of counsel."); *In re Farmland Industries, Inc.*, 296 B.R. 188, 192 (B.A.P. 8th Cir. 2003) (reviewing bankruptcy court's order determining mechanism of payment of investment banker's transaction fee for abuse of discretion).

14. The Buyer cannot avoid its burden to make this demanding showing simply by pointing to language in the Escrow Agreement. First, Gordian is not a party to the Escrow Agreement and is not bound by its provisions. Moreover, having tied the hands of the Escrow Agent by imposing conditions on the release of funds, the Buyer should not be heard to argue that nothing can be done because the Escrow Agent's hands are tied. But even if that were a position that a party could somehow advance in good faith, the existence of a final, non-appealable order is not the only route to a release of funds consistent with the Fee Order. The Debtor and the Buyer may issue a Joint Release Notice to accomplish the same result. The Liquidating Trustee has confirmed that he would execute such a Joint Release Notice in his capacity as successor in interest to the Debtor. The Court should compel the Buyer to do the same so that Gordian may obtain the benefit of the award in the Fee Order.

## REQUEST FOR SANCTIONS

15. The proceedings in this case, including the earlier actions of the Buyer in connection with the escrowed funds, have made it clear that the Buyer never had any good-faith basis on which to oppose the allowance or payment of the fees and expenses of Gordian.

6

Instead, the Buyer has engaged in a campaign of harassment, interposing one spurious obstacle after another and multiplying the expenses incurred by Gordian in pursuit of the compensation that it earned months ago. This is nothing short of an abuse of the bankruptcy process, and the Court should not tolerate it.

16. The Court may, under Section 105(a) of the Bankruptcy Code and its inherent power, require the Buyer to compensate Gordian for the attorneys' fees and expenses it has incurred as a result of the Buyer's intransigence. *See In re Clark*, 223 F.3d 859, 864 (8th Cir. 2000) (affirming award of fees and expenses under § 105 and inherent power "to prevent an abuse of the bankruptcy process"); *Isaacson v. Manty*, 721 F.3d 533, 538 (8th Cir. 2013) (bankruptcy court's inherent authority includes power to sanction "bad-faith conduct"). The Court should do so, demonstrating to the Buyer and others who may be inclined to follow its scorched-earth approach that abusive manipulation of the Chapter 11 process will not be tolerated. Gordian should be compensated, at a minimum, for its fees and expenses relating to its emergency motion to require the Buyer to place the funds in escrow, the evidentiary hearing, the written closing argument following the hearing, the preparation of this Motion, and any further proceedings on this Motion.[3] Gordian will provide supporting detail in connection with a hearing, or by such earlier deadline as the Court may impose, but Gordian expects that the fees and expenses at issue will total at least $50,000.

17. Gordian also reserves the rights to seek additional relief under the Court's contempt powers if the Buyer refuses to comply with any order of the Court (*see, e.g., In re Steward*, 828 F.3d 672 (8th Cir. 2016)); interest to compensate for the delays caused by the

---

[3] Gordian acknowledges that it would have incurred fees and expenses to prepare the Fee Application and a short reply to the objection of 510 Ocean Drive Debt Acquisition, LLC regardless of the Buyer's behavior, and it does not seek reimbursement of those amounts. *See In re Kujawa*, 270 F.3d 578, 582 (8th Cir. 2001).

7

Buyer; sanctions under Rule 9011 in connection with any further filing that the Buyer may make; and appropriate relief under Rule 8020 if the Buyer pursues a baseless appeal.

WHEREFORE, Gordian respectfully requests that the Court enter one or more orders:

(a) compelling the Buyer to immediately execute a Joint Release Notice sufficient to authorize and direct the Escrow Agent to pay $1,251,023.08 to Gordian, without prejudice to repayment if and to the extent that the Buyer is successful on an appeal of the Fee Order;

(b) directing the Buyer to show cause why it should not be sanctioned and required to reimburse Gordian for the attorneys' fees and expenses it has incurred as a result of the Buyer's actions in resisting the allowance and payment of the compensation earned by Gordian in connection with the WDC transaction, or otherwise providing notice of the possible imposition of sanctions and an opportunity to be heard;

(c) awarding such sanctions to Gordian; and

(d) granting Gordian such other and further relief as is just and equitable.

Dated: December 3rd, 2018

Respectfully submitted,

David A. Morse
Law Offices of David A. Morse
1010 Insurance Exchange Building
505 Fifth Avenue
Des Moines, IA 50309
(515) 243-7600
dave@davemorselaw.com

-and-

BRYAN CAVE LEIGHTON PAISNER LLP
Brian C. Walsh (admitted *pro hac vice*)
One Metropolitan Square
211 N. Broadway, Suite 3600
St. Louis, MO 63102
(314) 259-2000
brian.walsh@bclplaw.com

Attorneys for Gordian Group, LLC

CERTIFICATE OF SERVICE:

The undersigned certifies this document was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing.

3 December 2018

**Exhibit A**

Escrow Agreement