IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA

In the Matter of:

**Fansteel Foundry Corporation,**         Case No. **16-01825-als11**

Debtor.

**MEMORANDUM OF DECISION**
**(date entered on docket: May 8, 2019)**

Before the Court is a contested matter involving the Liquidating Trustee's objection[1] to Abigail Land Holdings II, LLC's tax lien (Abigail). Jurisdiction arises under 28 U.S.C. §§ 157 and 1334. For the reasons stated the Trustee's objection is overruled.

## **FACTS**

Debtor filed its petition on September 13, 2016. An amended Schedule E/F added the Union County Treasurer as an unsecured priority claimant in the amount of $267,102.00 which was not identified as contingent, unliquidated or disputed. An amendment to Schedule D was also filed adding Gardenia Ventures, LLC (Gardenia) as a secured creditor for a disputed "tax lien" in the amount of $95,301.00 but did not identify the property subject to the lien.

When it appeared that reorganization was unlikely the Debtor turned to a sale of its assets under 11 U.S.C. §363. A Motion to Sell Free and Clear of Liens under 11 U.S.C. §363(f) was filed in July 2017. The Motion attached proposed bid procedures and an Asset Purchase Agreement from TCTM Financial LLC, Debtor's senior secured lender, as the Stalking Horse.

---

[1] The original objection was filed jointly by the Debtor and Unsecured Creditors Committee. Since that time the plan has been confirmed and the Liquidating Trustee is responsible for pursuing the objection.

Around this same time the Committee filed a request that a mediator be appointed to assist in facilitating the resolution of claims held by various entities. The sale was pursued simultaneously with the mediation process.

The final sale hearing was eventually held on March 5, 2018. Upon determining that the sale met the conditions of 11 U.S.C. S363(f) the Court approved the sale. The final sale order was not appealed. The sale closed on May 7, 2018.

On July 16, 2018 the Debtor filed its third amendment to Schedule D which deleted Gardenia Ventures, LLC from the schedules and added Abigail as a secured creditor in the amount of $236,134.00. The description states that Abigail "purchased tax-sale property from Gardenia Ventures LLC." Unlike Gardenia's scheduled claim, however, there is no indication on the amendment that Abigail's claim is disputed. Four days after that amendment was filed the Trustee filed this pending objection.

During final arguments Trustee's counsel stated that Abigail had not provided information to establish its claim. The Court directed Abigail to file a proof of claim that included the required documentation. On January 25, 2019 Abigail filed its claim in the amount of $226,657.42. The documents attached set forth the following facts:

1. In June 2015 the Creston property was subject to tax sale.

2. Gardenia obtained the tax sale certificate for that real estate by paying the 2013 delinquent taxes in the amount of $95,301.00.

3. Later Gardenia paid the delinquent 2014 taxes in the amount of $183,001.00 and that amount was added to the tax sale certificate.

4. On February 8, 2018 Abigail received an assignment of Gardenia's tax sale certificate by payment of $236,134.00.[2] The claim includes a document from the Union County

---

[2] This transaction is set forth on a document attached to the proof of claim that appears to be the original tax sale certificate issued to Gardenia. No information has been supplied as to what entity or individual obtained the payment or signed as assignor. But, the Court has no reason to doubt the authenticity or legal effect of the document.

2

Treasurer records that reflects, as of January 19, 2019, a lien in the amount of $183,000.00 and accrued interest in the amount of $146,613.00.

5. After including service fees, the total amount to redeem the certificate as of the same date is $329,548.62.

## DISCUSSION

The focus of the Trustee's objection is that the value of Abigail's lien is subject to bifurcation into secured and unsecured amounts based upon the value of the underlying collateral. 11 U.S.C. §506(a). He asserts the because the Creston real estate has no value Abigail holds an unsecured claim. The Trustee advances three reasons to justify this conclusion.

First, is the value of the real estate. The Trustee points to the allocation of the purchase price in a revised APA to indicate the property has a value below that of Abigail's lien. This revised document was supplied to the Court and interested parties on the morning of the Sale Hearing. Section 2.1 states:

> $1.00 of such consideration (or such other amount as may be determined by the Bankruptcy Court) shall be apportioned for the purchase of the Debtor's real estate assets and the remainder of the consideration shall be apportioned for the purchase of the Debtor's non-real estate assets.

This position overstates the meaning and purpose of this allocation and is taken out of context. Set forth below is Section 6.3 of the APA which more specifically describes the purpose of the allocation.

> Allocation of Consideration and Consideration Allocation Forms.
> Buyer shall allocate the TCTM Credit Bid, the Cash Consideration, and the Assumed Liabilities among the Acquired Assets as reasonably determined by Buyer (the "Allocation"). **The Parties agree, however, that the consideration shall be apportioned only to non-real estate assets.** No later than ninety (90) days, after the Closing Date Buyer shall prepare and deliver to Seller Buyer's determination of the allocation (the "Asset Acquisition Statement"). The Asset Acquisition Statement shall be conclusive and binding on

3

>  the parties.  Seller and Buyer will cooperate in filing with the Internal Revenue Service their respective Forms 8594 as provided for in Section 1060 of the Code on a basis consistent with the Allocation, and the Allocation shall be reflected on any Tax Returns required to be filed as a result of the transactions contemplated hereby.

(emphasis original).  As demonstrated by this language the Allocation under the APA does not support the Trustee's argument that it establishes the value of the Creston property.  No authority is cited that an allocation for tax purposes is an accepted method of collateral valuation for purposes of 11 U.S.C. §506(a).

The Debtor's schedules did not identify any environmental agency that would have served to inform parties or the Court of potential claims that may have existed against the real estate.  In his Objection the Trustee relies upon an assertion made in a claim objection against Creditor William Bieber to calculate the value of the Creston real estate.  The Trustee states: "it has been determined that the current known environmental liabilities associated with the Creston Property are not less than $19 million. . . These liabilities far exceed the modest estimated market value of the Creston Property. . . ."  To back this statement the Trustee cites to an unexecuted copy of the Environmental Settlement Agreement (Docket No. 552) between the Debtor, Buyer and various environmental agencies, including the United States of America Environmental Protection Agency.  That document fails to provide any details, or reference to, the estimated $19 million liability.  No information has been supplied to persuade the Court of the relevance of this valuation outside the confines of a settlement with William Bieber.

Second is the language of the Sale Order.  The Trustee points to language contained in the sale order that states: "**The terms and provisions of the APA** and this Sale Order **will be binding in all respects upon,** and will inure to the benefit of the Debtor, its estate, the Buyer and its respective affiliates, successors and assigns, and any **affected third parties** . . ." (emphasis

4

original). The Trustee's emphasis on only certain specific terms overlooks that both the *APA and Sale Order* are binding to the *benefit* of the named parties. This section does not establish a mandate that permits the APA, an agreement between the Debtor and the Buyer, to govern the rights of parties that may be affected by the provisions of 11 U.S.C. §363(f) and the Sale Order.

Third is the language of the Confirmed Plan related to the tax claim. The exact text states:

| Class 6 | Secured Claim Tax Claim of Gardenia Ventures LLC | The Gardenia Secured Claim[3] remains outstanding as an asserted lien against the WDC Sale Proceeds. The Claim is disputed. To the extent Allowed [as a secured claim], it will be paid pursuant to 11 U.S.C. §1129(a)(9)(C). If the Claim is deemed an Unsecured Claim, it will be paid as part of Class 9 [the class of general unsecured claims]. |

Throughout this case the claim arising under the tax sale certificate has been referred to as a "secured claim," "tax lien" or "tax claim." These terms are not interchangeable. The Court asked the parties to clarify their respective positions on whether Abigail would hold a tax claim if it did not hold a lien. The parties agreed that Abigail does not hold a "tax claim" under 507(a)(8). This further serves to highlight the inconsistencies in using these multiple references and the differing treatment that could result under 11 USC §§363(f), 506(a), 506(d), 507(a)(8) or 1129(a)(9)(C) for treatment of the Class 6 claim.

Further complicating the Trustee's reliance on the language appearing at Class 6 is the specific identification of Gardenia as the holder of the tax claim. The Plan filed on June 23, 2018 identified Gardenia and its treatment in Class 6. It was *after* that date, on July 16, 2018, that the Debtor amended Schedule D to add Abigail. The docket reflects that a copy of the entire proposed plan was served in late June 2018.[4] Accordingly, it seems that Abigail would not have a copy of

---

[3] In the Joint Objection the reference to "Gardenia Secured Claim" was deleted and replaced with "[The Tax Claim]."
[4] The modifications simply included the changes to be incorporated into the proposed plan, none of which involved Class 6.

5

Joint Plan and Disclosure Statement.  The Trustee appears to suggest that the confirmed plan that identified Gardenia and its treatment is now automatically binding on Abigail.

In its resistance Abigail contends that the objection to its claim does not apply a precise reading of 11 U.S.C. §506(a) which only permits a valuation of a creditor's lien "*on property in which the estate has an interest.*"  "A fundamental premise of section 506(a) is that a claim is subject to reduction in security only when the estate has an interest in the property. *Koppersmith v. United States*, 156 B.R. 537, 539 (Bankr. S.D. Texas 1993); Dewsnup, 502 U.S. at ––––, 112 S.Ct. at 776 (citing In re Dewsnup, 908 F.2d 588, 590–591 (10th Cir.1990).  Legislative history therefore indicates that, "property ceases to be property of the estate, such as by sale, abandonment, or exemption."  See H.R.Rep. No. 95–595, 95th Cong., 1st Sess., 5, reprinted in 1978 U.S.Code Cong. & Admin. News 5787, 6299.  This argument is persuasive based upon 11 U.S.C. §363(f), the Sale Order and Iowa law.

A debtor bears the burden one to prove up at least one of the five factors set forth at 11 U.S.C. §363(f) in order to sell assets "free and clear" of liens.  Specifically, the statute permits this result *only* if:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

The Sale Motion filed by the Debtor relied specifically on consent under 363(f)(2) and a bona fide dispute under 363(4).  As to consent the Debtor asserted that any party that failed to object had consented to the sale.  Courts are split on whether implied consent is sufficient under this code provision.  *In re Flour City Bagels, LLC*, 557 B.R. 53, 85-86 (Bankr. W.D.N.Y. 2016).  In his

6

objection to Abigail's Claim the Trustee argues that despite receiving the relevant notices Gardenia did not file an objection or appear at the final sale hearing. This absence of action is not surprising because at the time Gardenia had no standing to object or consent. Abigail's consent cannot be implied under the circumstances of the case because it did not receive notice of the sale and therefore was not afforded the opportunity to object. *SHF Holdings, LLC v. Allamakee Cty. (In re Agriprocessors, Inc.)*, 465 B.R. 822, 828-29 (Bankr. N.D. Iowa 2012); Fed. R. Bankr. P. 6004(c); see *In re Golf, L.L.C.*, 322 B.R. 874, 877 (Bankr. D. Neb. 2004). The Debtor's own amendment to Schedule D did not indicate a dispute related to Abigail's claim and the Trustee identifies no facts which indicate Abigail's tax lien is not valid under Iowa law. Accordingly, the Court infers that the bona fide dispute exception applied only to the claims held by William Bieber and perhaps 510 Ocean Drive Acquisition, LLC and other entities involved in the mediation process.

The remaining exceptions under 363(f)(1) and 363(f)(5) were not established and cannot now be applied to the tax lien. It is a well-settled principle of bankruptcy law that property interests are created by and governed by state law. *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979). Under Iowa law real estate taxes constitute a tax lien against the property that attaches at the moment the tax is levied.[5] I.C.A. § 445.28 (2009); *Merv E. Hilpipre Auction Co. v. Solon State Bank*, 343 N.W.2d 452, 454–55 (Iowa 1984). Unlike other liens, however, tax liens are not foreclosed upon, but are instead subject to a tax sale for satisfaction of the outstanding balance. See generally I.C.A. chs. 445 to 448 (2009). Annual tax sales are conducted to obtain payment of delinquent taxes. In exchange for payment of the total taxes due a bidder receives a certificate of purchase, also known as a tax sale certificate which accrues interest at an annual rate of 24%. The result of this process is that the delinquent tax liens are transferred with the tax sale

---

[5] A concise overview of tax liens under Iowa law appears in 17 Ia. Prac., Real Estate Law and Practice § 15:12 (2018-2019 ed.)

7

certificate to the purchaser. I.C.A. § 446.16(3) (2009). A tax lien is superior to all liens except those of the state. *City of Waterloo v. Bainbridge*, 749 N.W.2d 245, 247 (Iowa 2008); *See* Iowa Code § 495 (1851) (stating "taxes upon real property are hereby made a perpetual lien thereupon against all persons except the United States and this state"); *Merv E. Hilpipre Auction Co.,* 343 N.W.2d at 455. Both the Debtor and the Liquidating Trustee failed to prove that Iowa's statutory scheme allows the real estate to be sold free and clear of liens or that a monetary satisfaction of less than the full tax lien is permitted.

The Creston property has been sold and it is no longer property of the estate. After the sale the estate held a property interest in the proceeds from that sale to which valid liens attached. The final Order submitted by the Debtor and approved by the Buyer stated:

> This Sale Order is effective as a determination that any and all Allowed Secured Claims[6] will be, upon the Closing Date, without further action by any person or entity, unconditionally released, discharged and terminated with respect to the Assets and *transferred to the proceeds from the sale* and, upon the Closing Date, that the conveyances described herein and in the APA have been effected.

(emphasis added). This language indicates that the sale order simply substituted the sale proceeds in place of the Creston property. *In re Trilogy Dev. Co., LLC*, 468 B.R. 835, 838 (B.A.P. 8th Cir. 2012). This outcome is also consistent with Iowa law.[7]

The effect of the Debtor's 363 sale can have only one of two possible results: 1) the Creston property was sold free and clear pursuant to 11 U.S.C. 363(f)(3) and the tax lien attaches to the extent of the available sale proceeds; or 2) the Creston property was not sold free and clear of

---

[6] Although capitalized no such defined term appears in the Sale Order, APA or confirmed plan.
[7] *Stegemann v. Bendixen*, 219 Iowa 1190, 1193, 260 N.W. 14, 16 (1935); *Welander v. Hoyt*, 188 Iowa 972, 976-77, 176 N.W. 954, 956 (1920); *See Iowa Fair Plan v. United States, Internal Revenue Dep't*, 257 N.W.2d 626, 629 (Iowa 1977).

Abigail's tax lien for failure to establish any of the exceptions under 363(f).  Under either scenario Abigail's tax lien remains enforceable against the proceeds or the real estate.

The sale generated proceeds sufficient to sell the Creston property free and clear of the tax lien as provided for at 11 U.S.C. §363(f)(3).  Abigail's lien attaches those proceeds in its full amount.

For the reasons stated,

**IT IS HEREBY ORDERED:**

1. The Trustee's Objection to Claim is overruled.

2. The full amount of the tax lien attaches to the proceeds of the sale.

/s/ Anita L. Shodeen
Anita L. Shodeen
U.S. Bankruptcy Judge

Parties receiving this Memorandum of Decision from the Clerk of Court:
Electronic Filers in this Chapter Case